SMITH ET AL. v. C., & N. W. R. Co.

1. **Attorney at Law:** NOT LIMITED IN PROFESSIONAL ENGAGEMENTS BY FORMER EXPRESSION OF OPINIONS: COMPENSATION: EVIDENCE. The fact that one of the plaintiffs, an attorney at law, had, under a prior retainer, advocated views of the law and the facts different from those upon which his subsequent client, the defendant, rested its case, or had officially, as a judge or officer of the government, held a different view of the law and the rights of the parties, did not of itself disqualify him from accepting a retainer from the defendant, nor did it necessarily render his services less valuable to the defendant; and, in an action against the defendant for the value of his services, it was error to admit evidence of the advocacy of such former opinions, for the purpose of showing bad faith, whereby to defeat his recovery.

2. ———: COMPENSATION: NATURE OF SERVICES: INSTRUCTION. Where the services for the value of which plaintiffs sued were rendered in a case before the Secretary of the Interior, wherein certain heirs sought to establish in themselves title to defendant's land, in which effort they were defeated, it was error for the court to instruct the jury that the ownership of the land was not involved in that proceeding, and that the title to the land was not affected by the decision of the Secretary.

3. ———: ———: MAGNITUDE OF INTERESTS INVOLVED. In such case it was error to instruct the jury that the magnitude of the controversy and the great value of the property should not be considered in determining the compensation which plaintiffs were entitled to recover. For, while the labor of an attorney in conducting a case wherein great values are involved may be no greater than would be required in conducting a case of trifling importance, yet the responsibility would be greater, and this ought to be considered in determining his compensation.

4. ———: ———: NATURE OF SERVICES: INSTRUCTION. A certain former opinion of the Secretary of the Interior, relating to the land in question in the proceeding in which plaintiffs were employed, was read in evidence in this case; and the court instructed the jury that the presumption was that the documents and records referred to in this opinion were the only matters which it was necessary for plaintiffs, as defendant's attorneys, to examine, so far as the facts of the case were concerned. *Held* that this was error, because, first, no such presumption arose out of the nature of the case, and, second, the opinion referred to plainly indicated that there must have been other documents and facts considered by plaintiffs than those referred to in the opinion.

5. ———: ———: ———: EVIDENCE. In such case it was proper to permit defendant to show that its general solicitor aided plaintiffs in the cause in which they rendered services, and that he submitted a written or printed argument in that cause; but it was not proper to admit such argument in evidence, since it contained statements of facts which should have been excluded from the jury.

*Appeal from Pottawattamie District Court.*

FRIDAY, MARCH 23.

ACTION to recover for professional services rendered by plaintiffs, who are attorneys at law. There was a judgment upon a verdict for defendant. Plaintiffs appeal.

*Sapp & Lyman*, for appellants.

*Wright & Baldwin* and *N. M. Hubbard*, for appellee.

BECK, J.—I. The plaintiffs, who are attorneys at law, sue to recover $3,000, the balance due them for professional services rendered in resisting a claim of the heirs of one Murray McConnell, made before the Department of the Interior of the United States, for a patent of certain lands in the city of Chicago, which, they allege, their ancestor entered at the proper government land office. The sum charged for the services was $4,000, but a payment of $1,000 was made to plaintiffs, for which they gave credit upon their account on which the action is brought.

The answer of defendant denies the allegations of the petition, and avers that plaintiffs have been paid for all services rendered by them for defendant. It is pleaded as a special defense that plaintiffs, prior to their retainer by defendant, had written and approved certain official opinions submitted to the Secretary of the Interior, and one of them, signed by that officer, deciding the matter in controversy touching the issuing of a patent to the lands, against the defendant, which were read upon the hearing of the application for the patent, and quoted against defendant, and that plaintiffs had fraudulently concealed from defendant the fact that they had prepared and approved the opinions, whereby "defendant was greatly prejudiced and put to extra labor and expense in the defense of the case."

There was evidence upon the trial tending to show that, on the 7th of May, 1831, Robert A. Kinzie entered a tract of

land of $102\frac{29}{100}$ acres, now within the city of Chicago, at the land office at Palestine, in the State of Illinois. The entry was made under a pre-emption claim based upon occupancy by Kinzie. Under an act of Congress of February 19, 1831, the lands included in Kinzie's entry, with other public lands, had been transferred for entry to the United States Land Office established by the act at Danville, so that, under the law at the time of Kinzie's entry, the land was not for sale at the Palestine Land Office. Kinzie continued in possession of the land after the entry, and laid it off into town lots. Defendant acquired title, under Kinzie, to a part of a tract containing $6\frac{58}{100}$ acres, which was included in Kinzie's entry. Subsequently the public lands in and about Chicago were transferred for sale to a United States land office in that city, and were offered at public sale in 1835.

In 1836, Murray McConnell entered several thousand acres of land at the Chicago office, including the $6\frac{58}{100}$ tract, a part of which is owned by defendant. The entry was made and permitted for the reason that, on account of the change in the land districts above referred to, the land was not subject to entry at Palestine when Kinzie's entry was made, which was, therefore, void. McConnell was compelled, through fear of violence from persons who had made prior entries of the land at Palestine, to surrender his duplicates and cancel his entries, excepting the duplicate and entry of the tract of $6\frac{58}{100}$ acres, which he retained. McConnell claimed that this tract in question, being in another subdivision, was not covered by the Kinzie entry.

McConnell's entry was canceled by the Commissioner of the General Land Office in 1836. He applied for a patent in 1857, which was denied. In 1874, McConnell having died, his heirs made application to the Interior Department for a rehearing of the case, on the ground that the former decision was in conflict with the fact, in holding that the land had not been offered at public sale prior to McConnell's entry.

May 31, 1875, the decision of the Secretary of the In-

terior, adverse to the application of McConnell's heirs for a re-examination of the case, was announced in a letter by that cabinet officer to the Commissioner of the General Land Office, based upon the ground that the case was *res adjudicata*. But in the letter the Secretary expresses the opinion that the prior decision of the department was based upon errors of law and of fact, "and that the appellants, upon considerations of equity and justice, are entitled to the relief sought." The case, after this decision, was presented to President Grant, who directed the Secretary of the Interior in regard to the case to "make such examination and take such action as, in his opinion, justice and equity demand." It was again submitted to the Secretary of the Interior, and, on the 2d day of September, 1875, a decision in the form of a letter to the Commissioner of the General Land Office was prepared, holding that the cancellation of McConnell's entry should be set aside. This letter was never signed by the Secretary of the Interior, nor transmitted to the Commissioner of the General Land Office; the decision was, therefore, not adopted or promulgated. It is based upon the facts that the entry of Kinzie did not include the land in question; that it was void, for the reason that the land was not in the Palestine land district when the entry was made, but was in the Danville district, and that the land had been offered at public sale prior to McConnell's entry at the Chicago Land Office.

The case, upon this application for a re-examination, came on for hearing in December, 1875, and the plaintiffs were employed by the General Solicitor of defendant to appear in, conduct and argue the case in its behalf. A decision was announced December 20, 1875, refusing the application for re-hearing. The decision is based upon the fact that the evidence does not overcome the presumption raised by the contemporaneous decision of the Commissioner of the General Land Office, that the land had been offered at public sale, and upon the want of equity in the claim of the heirs, and considerations of public interest, demanding that decisions and ac-

tions of the executive department of the government affecting private rights should not, after so long a time, be disturbed. The decision does not consider the effect of Kinzie's entry, and an act of Congress under which it is claimed his entry was confirmed and defects therein cured.

The foregoing statements of facts, while brief and omitting many things that appear in the record, is sufficient, with some other facts hereafter to be stated, for the consideration of certain questions arising in the case, involving the rulings of the court in admitting testimony and in giving instructions to the jury.

II. The court admitted evidence against the plaintiff's objection tending to show that one of the plaintiffs, Smith, who **1. ATTORNEY at law: not limited in professional engagements by former expression of opinions: compensation: evidence.** at the time was Assistant Attorney-general, assigned to duty in the Interior Department as its solicitor, prepared the letters of the Secretary, dated May 31, and September 2, 1875, respectively, announcing the decision in the case, and that the earliest letter was referred to and commented upon by counsel of McConnell's heirs, in the final argument before the Secretary. Both of these letters were, against plaintiff's objection, admitted in evidence. There was evidence tending to show that the plaintiffs did not disclose to the defendant, when they were retained, that Smith had prepared these decisions.

The court instructed the jury in effect that if plaintiffs did not inform defendant that Smith had prepared the decisions, the fact could be considered by the jury in determining the value of plaintiffs' services. The admission of the evidence touching these decisions, and the admission of the decisions themselves, as well as the instructions just referred to, in our opinion are clearly erroneous. The position of counsel of defendant seems to be that as plaintiff, Smith, had, while in office, prepared and concurred in a decision adverse to defendant, it was a fraud upon his part to accept a retainer and render services for defendant, without having disclosed his con

nection with the case, and his concurrence in the decisions re-
ferred to, and that he cannot recover for such services.   The
court below held that these facts could be considered in deter-
mining the value of plaintiffs' services.

An attorney at law ought not to accept a retainer in a case
when he believes that the law is against his client.   It is not
his duty, in order to subserve the interest of his client, to
misstate the law and the facts, and if he be satisfied that the
client cannot recover except by perversion of the law and the
facts, the attorney ought not to take the case.   But the fact that
an attorney has, under a prior retainer, advocated views of the
law and facts different from those upon which his client rests
his case, or has officially, as a judge or officer of the government,
held a different view of the law and the rights of the parties,
will not of itself disqualify him from accepting a retainer.
An attorney has the right and privilege, possessed by all men
and all officers and judges, to change his views upon the law
and the facts of a case, when reason requires it.   It would be
absurd to say that a lawyer or judge, having once expressed
an opinion upon legal questions, shall never change it, and
that a judicial or official decision will forever bind the person
announcing it.   From the nature of legal questions, which al-
ways depend upon the combination of facts for their correct
decision, it is to be expected that lawyers will not always, in
their solution, apply the same principles or reasoning.   And
we doubt not that it often occurs that in cases upon the same
facts lawyers honestly have, at successive periods, different
views of the law.   Lawyers often go from the bench or other
official position to the bar.   It would be absurd to require such,
when offered a retainer, to review their judicial and official
services, in order to advise their clients whether, at a prior
time, they had held opinions which might be regarded as un-
favorable to their cause, or, if they failed to do this, to sub-
ject them to a charge of fraud, which could be set up as a
defense to their claims for compensation.   This is just what
defendant insists upon.

The position of counsel for defendant and the court below is based upon the thought that the value and efficiency of a lawyer's services depends upon some personal quality; that courts and officers discharging judicial duty will be affected by showing that the advocate before them has changed his views of the law, or that even his personal traits or antecedents are subject to remarks or criticisms. The judge or officer, if he rightly discharges his duty, will hear nothing of the kind, and will be far from permitting it to influence his decision, if, in any way, it has come to his knowledge. A lawyer should be heard for his cause, and not for himself. His arguments should be alone weighed, and the precedents he cites should alone be considered, in deciding his cases. What he before advocated as a lawyer, or decided as a judge or officer, should be no more considered than his personal traits or antecedents.

Even if the position of counsel for defendant and the court below, that such matters should be considered, be correct, it would rather appear that plaintiffs were not the less able to serve defendant by reason of Smith's prior concurrence in the decisions of the Secretary. These opinions, doubtless, were entitled to some weight in the final decisions of the case, or at least would direct the thought of the Secretary in the line of their arguments. Now, it is quite plain that if Smith's personal connection with the decisions gave them any weight, his position on the trial, combatting them, would take from them whatever of strength they derived from his personal concurrence in them. If the Secretary was improperly influenced by the consideration of Smith's connection with the case, rather than by his arguments and authorities, it is quite probable that the weight of his views as an officer was weakened by his position as counsel. But we cannot presume that the Secretary violated his duty by considering any such matters. We are required to conclude that he decided the case upon its merits, and was in no manner influenced by the prior views of the counsel.

III.   The District Court instructed the jury that the ownership of the land was not involved in the proceeding before the Secretary of the Interior, and that the title to the land was not affected by his decisions. These instructions are clearly erroneous. The proceedings were instituted to acquire title to the land. The obtaining of a patent was the first step in that direction. It matters not what was the strength or justice of the claim of the heirs. They were, in the proceedings, assailing defendant's title and attempting to establish an adverse title in themselves. It surely cannot be said that a decision which defeated this assault upon defendant's title, and overthrew the claim of the adverse parties, did not affect defendant's title. It removed the cloud resting upon it. While the title was perfect before the decision, yet it was protected from an unlawful assault, and was surely, to this extent, affected thereby. It cannot be said that a title is not affected by a decision overthrowing an adverse claim. The object of the proceedings by the heirs was to establish an equitable title. Had they succeeded, they would have the legal title, and would have had what is called the ownership of the property. It was really a contest for the ownership of the land. The instructions were clearly erroneous. They demand no further attention.

IV.   The evidence tended to show that the land in controversy was worth a million of dollars or more. The court instructed the jury that the magnitude of the controversy and the great value of the property should not be considered in determining the compensation which plaintiffs are entitled to recover. While the labor of an attorney in conducting a case wherein great values are involved may be no greater than would be required in a case of trifling importance, yet the responsibility would be greater. This ought to be considered in determining his compensation. Lawyers ought not to be deprived of the benefit of rules regarded as just in other business transactions. A carrier would surely be expected to charge more for the

*(Margin notes: 2. ——: compensation: nature of services.  3. ——: ——: magnitude of interest involved.)*

transportation of a million of dollars in paper money, than for the transportation of a bag of silver dollars of the same weight. The same rule applies in many other departments of business. In cases of great magnitude, not only is the responsibility greater, but the resistance is always more formidable, than in cases where less is involved. The world knows that in a case of this kind, where a tract of land worth less than $500 is involved, the contest would not be so vigorous on either side, as in a case wherein the contest is for land in Chicago, worth one or two millions of dollars. We are authorized to say that under the general custom of the profession, values in controversy always control charges for professional services.

V.   The District Court gave the jury the following instructions: "3.   An opinion rendered by the Secretary of the Interior in the proceeding in which plaintiffs were employed, has been read in evidence on the trial.

4. ——: —— : *nature of services: instructions.*

This opinion is evidence of the character of the proceedings. It also recites or indicates the various steps which had been previously taken in the matters involved in the proceedings.

"The presumption is that the documents and records pertaining to the various proceedings in the matter, as they are stated in this opinion, were the only matters which it was necessary to examine, so far as the facts of the case were concerned. But as plaintiffs were to make an argument in the matter before the Secretary, and as such argument would necessarily relate to the law as well as the facts of the case, it was necessary that they spend time in examining the law of the case. These are matters, then, which you are to consider indetermining the amount of time which it was necessary for plaintiffs to spend in preparing the case for hearing before the Secretary of the Interior."

We think no presumption arises that the plaintiffs were not in the discharge of their duty required to examine other records or documents than those "recited or indicated" in the

opinion of the Secretary. It is an unusal thing that such an opinion refers to all evidence, documentary or otherwise, presented in the case. But the opinion shows positively and plainly that there must have been other documents and evidence than those referred to in the Secretary's opinion, considered by the attorney for defendant. The opinion expressly shows that Kinzie's entry, and all evidence connected therewith, were not considered, the Secretary holding that the claim of the heirs must fail without regard to the evidence in support of the defendant's title. His decision rests upon the want of equity in the claim of the heirs, and the former adjudication in the case. Doubtless the attorneys for defendant considered and presented all the evidence supporting the validity of Kinzie's entry and patent, for prudence would so dictate.

VI. An argument in print or writing, submitted by the General Solicitor of defendant, was admitted in evidence. It was proper to show the fact that such an argument was made, and its character. But any statement of facts it contains should have been excluded from the jury. These remarks are especially applicable to that part of the argument which refers to the opinion of the Secretary, prepared by Mr. Smith. This part of the argument should have been excluded. Any other statements of facts which would probably prejudice plaintiff or benefit defendant ought not to have been admitted in evidence.

For the errors pointed out the judgment of the District Court is

REVERSED.